# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SHARKNINJA OPERATING LLC and
SHARKNINJA SALES COMPANY,

        Plaintiffs,

    v.

DYSON, INC. and DYSON TECHNOLOGY
LIMITED,

        Defendants.

C.A. No. 1:23-cv-11277

**JURY TRIAL DEMANDED**

## ANSWER AND COUNTERCLAIM TO COMPLAINT FOR DECLARATORY JUDGMENT

Dyson, Inc. and Dyson Technology Limited (collectively, "Dyson") through their undersigned attorneys respond to the allegations in Plaintiffs' Complaint for Declaratory Judgment as follows:

## NATURE OF ACTION

**Paragraph No. 1:** This is an action for declaratory judgment, seeking a declaration of noninfringement with respect to U.S. Patent No. 11,044,979 ("the '979 patent") (Ex. A) under the patent laws of the United States, 35 U.S.C. § 100 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. By this action, SharkNinja seeks to resolve an actual, immediate, and substantial controversy with Dyson as to the '979 patent.

**Answer to Paragraph No. 1:** Dyson admits that SharkNinja Operating LLC and SharkNinja Sales Company (collectively, "SharkNinja") have filed a complaint seeking a declaration of noninfringement with respect to U.S. Patent No. 11,044,979 ("the '979 Patent"). SharkNinja infringes the '979 Patent, as set forth herein, and Dyson admits that SharkNinja's infringement causes an actual, immediate, and substantial controversy. The remainder of this

paragraph comprises legal conclusions to which no response is required. To the extent a response is required, Dyson is without knowledge sufficient to form a belief as to the truth of such allegations and therefore denies them.

## THE PARTIES

**Paragraph No. 2:**  Plaintiff SharkNinja Operating LLC is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, Massachusetts 02494. SharkNinja has been based in Massachusetts for almost 20 years, moving its headquarters from Montreal, Canada to Massachusetts in 2003. Its current headquarters in Needham, Massachusetts, pictured below, house over 750 employees, including research and development, sales, marketing and corporate leadership personnel. SharkNinja's Massachusetts headquarters are home to a vast number of its employees and operations.

**Answer to Paragraph No. 2:**  Dyson admits that SharkNinja Operating LLC is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, Massachusetts, 02494. Dyson is without knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

**Paragraph No. 3:**  Plaintiff SharkNinja Sales Company is a Delaware Corporation organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, Massachusetts 02494.

**Answer to Paragraph No. 3:**  Admitted.

**Paragraph No. 4:** Upon information and belief, Defendant Dyson, Inc. is a corporation organized and existing under the laws of the State of Illinois, having a principal place of business at 600 W. Chicago Avenue, Suite 275, Chicago, IL 60654.

**Answer to Paragraph No. 4:** Dyson, Inc. admits that it is a corporation organized and existing under the laws of the state of Illinois. Dyson, Inc. denies that its principal place of business is 600 W. Chicago Avenue, Suite 275, Chicago, IL 60654. Except as specifically admitted herein, Dyson, Inc. denies the remaining allegations of paragraph 4.

**Paragraph No. 5:** Upon information and belief, Defendant Dyson Technology Limited is a limited company organized and existing under the laws of the United Kingdom, having a principal place of business at Tetbury Hill, Malmesbury, Wiltshire, United Kingdom, SN16 0RP.

**Answer to Paragraph No. 5:** Dyson Technology Limited admits that it is a private limited company organized and existing under the laws of England and Wales, with its principal place of business at Malmesbury, SN16, 0RP, United Kingdom. Except as specifically admitted herein, Dyson Technology Limited denies the remaining allegations of paragraph 5.

**Paragraph No. 6:** Upon information and belief, Dyson UK is the current assignee of the '979 Patent.

**Answer to Paragraph No. 6:** Dyson admits that the '979 Patent is legally and correctly assigned to Dyson Technology Limited, which owns all rights, title, and interest in and to same.

**Paragraph No. 7:** Dyson sent SharkNinja a letter on May 31, 2023 entitled "Notice of Infringement of U.S. Patent No. 11,044,979" on behalf of both Dyson US and Dyson UK, suggesting that Dyson US also has rights in the '979 patent. SharkNinja thus names Dyson US in this Complaint out of an abundance of caution to include all potential right-holders in the '979 Patent.

**Answer to Paragraph No. 7:** Dyson admits that on May 31, 2023, Dyson, Inc. and Dyson Technology Limited sent a letter to SharkNinja Operating LLC and SharkNinja Sales Co. regarding SharkNinja's ongoing infringement of Dyson's '979 Patent. Dyson further admits that Dyson, Inc. is the exclusive U.S. distributor of Dyson hair stylers, including the Dyson Airwrap® multi-styler, accessories, and parts in the United States. Dyson is without knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

## JURISDICTION AND VENUE

**Paragraph No. 8:** This Court has subject matter jurisdiction over SharkNinja's Declaratory Judgment Complaint under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202. As explained below, there is a definite, concrete, and substantial controversy between the parties, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment

**Answer to Paragraph No. 8:** Dyson admits that this Court has subject matter jurisdiction over SharkNinja's complaint under 28 U.S.C. §§ 1331, 1338, 2201, and 2202. Dyson admits that there is a definite, concrete, and substantial controversy between the parties of sufficient immediacy and reality to warrant relief but denies that SharkNinja is entitled to any such relief. Instead, as detailed herein, Dyson is entitled to relief for SharkNinja's infringement of the '979 Patent. Except as specifically admitted herein, Dyson denies the remaining allegations of paragraph 8.

**Paragraph No. 9:** This Court has personal jurisdiction over Dyson because Dyson has not only directed communications to SharkNinja in this District threatening legal action against SharkNinja but also has consciously and purposely engaged in actions to avail itself of the jurisdiction of this District, including that it has regularly and systematically transacted business in

this District and that it indicated in this District its intention to assert its rights under the '979 patent by pursuing claims of infringement against SharkNinja. Dyson's purposeful actions include sending a letter dated May 31, 2023 to SharkNinja at its headquarters at Needham, Massachusetts, which is in this District, accusing SharkNinja of infringing the '979 Patent. Dyson's May 31, 2023 letter did not offer a license and, instead, sought "a prompt but graceful exit of the Shark FlexStyle™ Air Styling and Drying System from the U.S. market," including in particular this District where SharkNinja has substantial sales, substantial offers for sale, and substantial promotional activity relating to the Shark FlexStyle™ Air Styling and Drying System. For example, SharkNinja designs and tests the Shark FlexStyle™ Air Styling and Drying System in this District, and its US sales and marketing organizations for the product are also located in this District.

**Answer to Paragraph No. 9:** Denied.

**Paragraph No. 10:** In addition, on information and belief, Dyson also maintains a Service Center for its products at 162 Cordaville Road, Suite 160, Southborough, MA 01772 ("Southborough Service Center"), which it markets on its website at https://www.dyson.com/support/service-centers/southborough. On information and belief, the Southborough Service Center is a physical location operated by Dyson, as shown below:

**Answer to Paragraph No. 10:** Dyson admits that a Dyson Service Center is located at 162 Cordaville Road, Suite 160, Southborough, MA 01772. Dyson admits that https://www.dyson.com/support/service-centers/southborough is a website for this Dyson Service Center. Except as specifically admitted herein, Dyson denies the remaining allegations of paragraph 10.

**Paragraph No. 11:** The Southborough Service Center also maintains a Facebook page at https://www.facebook.com/DysonServiceCenterMarlborough/. The Southborough Service

Center's Facebook page has advertised Dyson hair care products that, according to Dyson's May 31, 2023 letter, use technology disclosed in the '979 patent, including the Dyson Airwrap™ hair styling product since at least 2020, as shown below:

**Answer to Paragraph No. 11:**  Dyson admits that https://www.facebook.com/DysonServiceCenterMarlborough/ is the Facebook page for the Dyson Service Center located in Southborough, MA. Dyson admits that the screen shots in paragraph 11 can be found at this Facebook page. Dyson admits that the Dyson Airwrap® uses technology disclosed and claimed in the '979 Patent. Except as specifically admitted herein, Dyson denies the remaining allegations of paragraph 11.

**Paragraph No. 12:**  On information and belief, customers can purchase Dyson hair care products that, according to Dyson's May 31, 2023 letter, use technology disclosed in the '979 patent, including the Dyson Airwrap™ hair styling product, at the Southborough Service Center, which also promotes cross-selling opportunities and services to existing customers to promote sales.

**Answer to Paragraph No. 12:**  Dyson admits that the Dyson Airwrap® includes technology disclosed and claimed in the '979 Patent.  Dyson further admits that end-customers can purchase the Dyson Airwrap® hair styling product at the Southborough Service Center. Except as specifically admitted herein, Dyson denies the remaining allegations of paragraph 12.

**Paragraph No. 13:**  On information and belief, customers also can purchase Dyson hair care products that, according to Dyson's May 31, 2023 letter, use technology disclosed in the '979 patent, including the Dyson Airwrap™ hair styling product, throughout the District, including at stores such as Best Buy (available at South Bay Center location in Dorchester, MA and stores in Braintree, Mansfield, Dedham, Watertown, Everett, Dorchester, and Saugus),

Sephora (available at Sephora Cambridgeside location in Cambridge, MA, Sephora North Street location in Boston, MA, Sephora in Braintree, MA and Sephora in Burlington, MA), Neiman Marcus (available at Copley Place location in Boston, MA), Nordstrom (available at Natick, MA location and Burlington, MA location), and Ulta Beauty (available at South Bay Expansion location in Dorchester, MA Gateway Center location in Everett, MA, and stores in Braintree, Foxborough, Northborough, Hudson, and Bellingham). On information and belief, Dyson has substantial sales, substantial offers for sale, and substantial promotional activity relating to the Dyson Airwrap$^{TM}$ in the District.

**Answer to Paragraph No. 13:** Dyson admits that the Dyson Airwrap® includes technology disclosed and claimed in the '979 Patent. Dyson further admits that end-customers also purchase Dyson hair care products, including the Dyson Airwrap® hair styling product at stores such as Best Buy, Sephora, Neiman Marcus, Nordstrom, and Ulta Beauty. Except as specifically admitted herein, Dyson denies the remaining allegations of paragraph 13.

**Paragraph No. 14:** Dyson also has previously availed itself of the District by bringing litigation in the District, including against SharkNinja's predecessor—Euro-Pro Operating LLC. *See Dyson Inc. v. Euro-Pro Operating LLC*, C.A. No. 1:09-cv-11745-WGY (D. Mass.) (false advertising and unfair business practices).

**Answer to Paragraph No. 14:** Dyson admits that it previously filed the Complaint in the case *Dyson Inc. v. Euro-Pro Operating LLC*, C.A. No. 1:09-cv-11745-WGY (D. Mass.). The remainder of the allegations in this paragraph comprises legal conclusions to which no response is required. To the extent a response is required, Dyson is without knowledge sufficient to form a belief as to the truth of such allegations and therefore denies them.

**Paragraph No. 15:**  The actions set forth above bear a direct connection to, and form the basis for, SharkNinja's claims against Dyson and have created a real, live, immediate, and justiciable case or controversy between SharkNinja and Dyson. Dyson has asserted rights under a patent based on certain identified ongoing or planned activity of SharkNinja, and SharkNinja contends that it has the right to engage in the accused activity without license. In addition, SharkNinja now reasonably apprehends a patent infringement lawsuit by Dyson. The details relating to Dyson's actions to create this controversy are described in further detail in the Factual Background section below, which are incorporated by reference here

**Answer to Paragraph No. 15:**  Dyson admits that there is a real, live, immediate, and justiciable case or controversy between SharkNinja and Dyson concerning SharkNinja's infringement of Dyson's patent rights.  Dyson further admits that it has rights under a United States patent that are infringed by certain identified ongoing or planned activity of SharkNinja in the United States. Dyson admits that SharkNinja has no license from Dyson. Dyson incorporates by reference its responses in the Factual Background section below. The remainder of the allegations in this paragraph comprise legal conclusions to which no response is required. To the extent a response is required, Dyson is without knowledge sufficient to form a belief as to the truth of such allegations and therefore denies them.

**Paragraph No. 16:**  Dyson has thus established sufficient minimum contacts with the District of Massachusetts such that Dyson is subject to specific personal jurisdiction for this Complaint. Further, the exercise of personal jurisdiction based on these repeated and highly-pertinent contacts does not offend traditional notions of fairness and substantial justice.

**Answer to Paragraph No. 16:** This paragraph comprises legal conclusions to which no response is required. To the extent a response is required, Dyson is without knowledge sufficient to form a belief as to the truth of such allegations and therefore denies them.

**Paragraph No. 17:** Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400, including because, under Federal Circuit law, venue in declaratory judgment actions for noninfringement of patents is determined under the general venue statute, 28 U.S.C. § 1391.

**Answer to Paragraph No. 17:** This paragraph comprises legal conclusions to which no response is required. To the extent a response is required, Dyson is without knowledge sufficient to form a belief as to the truth of such allegations and therefore denies them.

**Paragraph No. 18:** Under 28 U.S.C. § 1391(b)(1), venue is proper in any judicial district where a defendant resides. An entity with the capacity to sue and be sued, such as Dyson, is deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question under 28 U.S.C. § 1391(c). As discussed above, Dyson is subject to personal jurisdiction with respect to this action, and thus, for the purposes of this action, venue is proper under 28 U.S.C. § 1391(b)(1). In addition, venue is proper for Dyson Technology Limited in any District, as a foreign defendant. 28 U.S.C. § 1391(c)(3).

**Answer to Paragraph No. 18:** This paragraph comprises legal conclusions to which no response is required. To the extent a response is required, Dyson is without knowledge sufficient to form a belief as to the truth of such allegations and therefore denies them.

**Paragraph No. 19:** For the reasons set forth above, venue is also proper under 28 U.S.C. § 1391(b)(2), given that a substantial part of the events or omissions giving rise to the claim

occurred and/or a substantial part of property that is the subject of the action is situated in this District.

**Answer to Paragraph No. 19:**  Admitted.

## FACTUAL BACKGROUND

**Paragraph No. 20:**  Plaintiff SharkNinja is a worldwide leader and innovator in the housewares industry. It offers more than 21 categories of products that include hair care products, vacuum cleaners, and kitchen appliances. SharkNinja has a rich history of providing "five star" products to consumers at affordable prices.

**Answer to Paragraph No. 20:**  Dyson denies that SharkNinja is a worldwide leader or innovator in the housewares industry or otherwise.  Dyson is without knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

**Paragraph No. 21:**  SharkNinja devotes significant resources to its research and development, which has resulted in, among other things, development of innovative products and product features. Indeed, SharkNinja's efforts have resulted in the development of its innovative Shark® haircare products that are well known for their quality, ease of use, and innovative technology. These include, but are not limited to, the Shark FlexStyle™ products and Shark HyperAir™ Hair Dryer products. SharkNinja's efforts have also resulted in the development of its innovative Shark® cleaning products. These include, but are not limited to, the Shark AI Ultra Robot™ 2-in-1 vacuum, the Shark® Stratos™ upright and cordless vacuum cleaners, Shark® Cordless Pro Vacuum, and Shark® Wandvac® Cordless Self-Empty System. SharkNinja's efforts have also resulted in the development of its Ninja® kitchen appliances that are also well known for their quality, ease of use, and innovative technology. These include, but are not

limited to, the Ninja® Foodi® pressure cooker, Ninja® Speedi™ rapid cooker, Ninja® Creami® ice cream maker, Ninja® Foodi® indoor grills, Ninja Woodfire™ outdoor grill, Ninja® Foodi® Power Blender, and Ninja® 12-in-1 smart oven products.

**Answer to Paragraph No. 21:** Dyson admits that SharkNinja sells products under the trade names identified in paragraph 21. Dyson denies that any such products are innovative. Dyson is without knowledge sufficient to form a belief as to the truth of any remaining allegations in this paragraph and therefore denies them.

**Paragraph No. 22:** SharkNinja's innovative products are sold by retailers as well as through direct marketing to consumers through the use of infomercials and on the Internet.

**Answer to Paragraph No. 22:** Dyson denies that SharkNinja's products are "innovative," but admits that the FlexStyle and other SharkNinja products are sold by retailers as well as through direct marketing to consumers on the Internet in the United States. Dyson is without knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

**Paragraph No. 23:** On August 24, 2022 (with a formal launch date of September 6, 2022), SharkNinja accepted orders for a new and innovative hair care product called the Shark FlexStyle™ Air Styling & Drying System, which can rotate back and forth from a powerful hair dryer to a multi-styling tool with just a twist. The FlexStyle™ offers smart hair care features at affordable prices.

**Answer to Paragraph No. 23:** Dyson is without knowledge sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

**Paragraph No. 24:** Dyson sent a letter to SharkNinja's Needham, Massachusetts headquarters dated May 31, 2023 ("May 31, 2023 Letter") and directed to the Chief Legal

Officer of SharkNinja. This letter purports to be on behalf of both Dyson UK and Dyson US. In the letter, Dyson wrongly accused SharkNinja of "infringing at least claim 1 of the '979 Patent." Dyson demanded that SharkNinja "immediately cease infringement" and respond to Dyson by June 7, 2023 to "negotiate a prompt but graceful exit of the Shark FlexStyle™ Air Styling & Drying System from the U.S. market." Dyson noted that should SharkNinja fail to exit, "Dyson . . . will pursue all legal remedies available."

**Answer to Paragraph No. 24:**  Dyson admits that Dyson Technology Limited and Dyson, Inc. sent a letter directed to the Chief Legal Officer of SharkNinja to SharkNinja's Needham, Massachusetts headquarters dated May 31, 2023. A copy of the letter is attached hereto as **Exhibit B.**  The contents of the letter speak for themselves and are incorporated herein by reference. Dyson is without knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

**Paragraph No. 25:**  Dyson has taken similar threatening actions in other jurisdictions with respect to foreign counterparts of the '979 Patent, which resulted in immediate litigation. In Germany, Dyson UK sent a letter to SharkNinja Germany GmbH ("SharkNinja Germany") and SharkNinja Europe Limited ("SharkNinja Europe") on March 8, 2023, accusing the Shark FlexStyleTM Air Styling & Drying System of allegedly infringing EP 3 119 234 B1. Shortly thereafter, on March 14, 2023, Dyson UK sued SharkNinja Europe and SharkNinja Germany on EP 3 119 234 B1.

**Answer to Paragraph No. 25:**  Dyson admits that Dyson sent letters to SharkNinja Germany GmbH and SharkNinja Europe Limited on March 8, 2023. Copies of the letters are attached to hereto as **Exhibit C** and **Exhibit D**, respectively**.**  The contents of the letters speak for themselves and are incorporated herein by reference. Dyson admits that On March 14, 2023,

Dyson Technology Limited sued SharkNinja Germany GmbH and SharkNinja Europe Limited in Germany for infringement of EP(DE) 3 119 234 B1 ("EP 234"). The '979 Patent is in the same patent family as EP 234.  On May 4, 2023, the Munich Regional Court I in Germany entered a preliminary injunction against Shark for infringement of claims 1 and 10 of EP 234.  Dyson is without knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

**Paragraph No. 26:**  In France, Dyson UK sent a letter to SharkNinja France on March 8, 2023, accusing the Shark FlexStyle<sup>TM</sup> Air Styling & Drying System of allegedly infringing EP 3 119 234 B1. On the previous day, on March 7, 2023, Dyson UK had also sent a letter to SharkNinja Germany on accusing the Shark FlexStyle<sup>TM</sup> Air Styling & Drying System of allegedly infringing EP 3 119 234 B1 in France. Shortly thereafter, Dyson UK sued SharkNinja France and SharkNinja Europe on EP 3,119,234B1 in France, and a writ of summons was delivered to SharkNinja France on April 4, 2023.

**Answer to Paragraph No. 26:**  Dyson admits that on March 7, 2023, Dyson UK sent a letter to SharkNinja Germany on accusing the Shark FlexStyle<sup>TM</sup> Air Styling & Drying System of allegedly infringing EP 3 119 234 B1 in France. A copy of the letter is attached hereto as **Exhibit E.** Dyson also admits that Dyson sent a letter to SharkNinja France on March 8, 2023. A copy of the letter is attached hereto as **Exhibit F.**  The contents of the letters speak for themselves and are incorporated herein by reference. Dyson further admits that on April 19, 2023, Dyson Technology Limited sued SharkNinja France and SharkNinja Europe Limited in France for infringement of EP 234. A request for preliminary injunction is pending in France. Dyson is without knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

**Paragraph No. 27:** In Korea, Dyson sent a letter to Cosmo Corp., a distributor of the Shark FlexStyle™ Air Styling & Drying System, on June 1, 2023, in which Dyson accuses the Shark FlexStyle™ Air Styling & Drying System of infringing KR 102143436 B1 and KR 102179911 B1, and threatens legal action.

**Answer to Paragraph No. 27:** Dyson admits that Dyson sent a letter to Cosmo Corp. on June 1, 2023. A copy of the letter is attached hereto as **Exhibit G.** The contents of the letter speak for themselves and are incorporated herein by reference. Dyson is without knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

**Paragraph No. 28:** While these foreign counterparts are different patents under different patent laws, and with different legal scope than the '979 patent, they nonetheless contribute to the substantiality and immediacy of the controversy between SharkNinja and Dyson with respect to the '979 patent.

**Answer to Paragraph No. 28:** This paragraph comprises legal conclusions to which no response is required. To the extent a response is required, Dyson is without knowledge sufficient to form a belief as to the truth of such allegations and therefore denies them.

**Paragraph No. 29:** Based on the May 31, 2023 Letter and the activities listed immediately above with respect to foreign counterparts of the '979 patent, there is a substantial controversy between SharkNinja and Dyson as to whether the Shark FlexStyle™ Air Styling & Drying System infringes the '979 Patent. SharkNinja and Dyson have adverse legal interests with respect to the question of infringement of the '979 patent, especially since there is already ongoing litigation in Germany and France over Dyson's patents that are counterparts to the '979 patent. Given Dyson's demand that SharkNinja "immediately cease infringement" by discontinuing the Shark FlexStyle™

Air Styling & Drying System, and to respond by June 7, 2023, along with the activities on the foreign counterparts set forth above, the dispute between SharkNinja and Dyson is immediate and real.

**Answer to Paragraph No. 29:** This paragraph comprises legal conclusions to which no response is required. To the extent a response is required, Dyson is without knowledge sufficient to form a belief as to the truth of such allegations and therefore denies them.

**COUNT I**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '979 PATENT**

**Paragraph No. 30:** SharkNinja incorporates the preceding paragraphs as if fully set forth herein.

**Answer to Paragraph No. 30:** Dyson incorporates its responses to the preceding paragraphs as if fully set forth herein.

**Paragraph No. 31:** The Shark FlexStyle$^{TM}$ Air Styling & Drying System is a revolutionary product that can act as a fast, powerful hair dryer, and with just a twist transforms into an ultra-versatile multifunction hair styling product, as shown below:



**Answer to Paragraph No. 31:** Dyson denies that the FlexStyle is a revolutionary product. Dyson denies that the image above, included in SharkNinja's complaint, accurately depicts the FlexStyle currently on-sale in the United States. Dyson is without knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

**Paragraph No. 32:** The Shark FlexStyle<sup>TM</sup> Air Styling & Drying System can include several attachments, including the Auto-Wrap Curler accessory, pictured below. The Auto-Wrap Curler wraps, curls, and sets users' hair by using air to wrap slightly damp hair around the barrel and dry it in place. The Shark FlexStyle<sup>TM</sup> Air Styling & Drying System can include two curlers to allow users to curl their hair in different directions.



**Answer to Paragraph No. 32:** Dyson admits that the FlexStyle system can include several attachments, including the two Auto-Wrap Curler accessories, pictured above. Dyson further admits that the Auto-Wrap Curlers wrap, curl, and set a user's hair by using air to wrap slightly damp hair around the barrel and dry it in place, as described and claimed in the '979

Patent. Dyson is without knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

**Paragraph No. 33:** SharkNinja has not infringed and does not infringe any claim of the '979 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271, including but not limited to through SharkNinja's making, using, selling, offering for sale, importing, and/or supplying SharkNinja's Shark FlexStyle™ Air Styling & Drying System, including the Auto-Wrap Curler. SharkNinja's Shark FlexStyle™ Air Styling & Drying System does not infringe for multiple reasons, including, but not limited to, those identified below.

**Answer to Paragraph No. 33:** Denied.

**Paragraph No. 34:** For example, SharkNinja's Shark FlexStyle™ Air Styling & Drying System does not meet at least the element "wherein the outlet in the cylindrical second portion of the attachment comprises at least one slot extending continuously from the proximal first portion to a distal end of the attachment" as recited in independent claim 1 of the '979 patent.

**Answer to Paragraph No. 34:** Denied.

**Paragraph No. 35:** For example, the FlexStyle™ Auto-Wrap Curler accessory has openings that do not extend continuously to a distal end of the attachment, as required by claim 1. The FlexStyle™ product has multiple openings for fluid air to exit the attachment, and those openings extend only a portion of the curler and cease long before a distal end of the attachment.

**Answer to Paragraph No. 35:** Denied.

**Paragraph No. 36:** The FlexStyle™ design is in stark contrast to the embodiments of the '979 patent, wherein the outlets extend continuously along the attachment to the distal end. For example, as shown below in Figure 3a of the '979 patent, the outlets (labeled 100), extend all the way to the distal end (the component labeled 36):



*FIG. 3a*

**Answer to Paragraph No. 36:** Denied.

**Paragraph No. 37:** The distinction above between the FlexStyle™ and claim 1 is one of the principal bases on which Dyson obtained its claims from the U.S. Patent and Trademark Office ("PTO"). After several rejections and amendments, including an appeal, Dyson finally agreed to an amendment that put the claims into allowable state required by the Examiner, by replacing the language "at least one slot extending continuously <u>towards a distal end</u> of the attachment" with "at least one slot extending continuously <u>from the proximal first portion to a distal end</u> of the attachment." May 10, 2021 Notice of Allowability at 3. Thus, the FlexStyle™, which does not have any "slot" that extends continuously to a distal end of the attachment, does not infringe either literally or under the doctrine of equivalents.

**Answer to Paragraph No. 37:** Dyson admits that the May 10, 2021, Notice of Allowability states: "Claim(s) 1, 3, 5, 7-16, and 36-38 (as amended below) is/are allowable…. Claim 1: Line 4-5: replace "towards a distal" with ---continuously from the proximal first portion to a distal---…. Claim 17: Line 6-7: replace "towards a distal" with ---continuously from the

proximal first portion to a distal---…. The claims in the instant invention have not been rejected using prior art because no references, or reasonable combination thereof, could be found which disclose or, in combination, make obvious the invention set forth in claims 1 and 17." A complete copy of the notice of allowance is attached hereto as **Exhibit H.** The contents of the notice of allowance speak for themselves and are incorporated herein by reference. Dyson denies that FlexStyle lacks the claimed "at least one slot extending continuously <u>from the proximal first portion to a distal end</u> of the attachment." The remainder of this paragraph comprises legal conclusions to which no response is required. To the extent a response is required, Dyson is without knowledge sufficient to form a belief as to the truth of such allegations and therefore denies them.

      **Paragraph No. 38:** As another example, SharkNinja's Shark FlexStyle<sup>TM</sup> Air Styling & Drying System also does not meet at least the element "wherein the outlet is at least partially defined by an external surface of a substantially contiguous wall of the attachment and is configured to direct fluid flow emitted from the outlet tangentially along and around the external surface of the substantially contiguous wall to form a circumferential fluid flow around the cylindrical second portion of the attachment that encourages hair to automatically wrap around the cylindrical second portion, wherein the external surface of the substantially contiguous wall is an outermost surface of the attachment along an entire length of the attachment from a beginning of the at least one slot to an end of the at least one slot" as recited in independent claim 1 of the '979 patent.

      **Answer to Paragraph No. 38:** Dyson denies that FlexStyle lacks the element "wherein the outlet is at least partially defined by an external surface of a substantially contiguous wall of the attachment and is configured to direct fluid flow emitted from the outlet tangentially along

and around the external surface of the substantially contiguous wall to form a circumferential fluid flow around the cylindrical second portion of the attachment that encourages hair to automatically wrap around the cylindrical second portion, wherein the external surface of the substantially contiguous wall is an outermost surface of the attachment along an entire length of the attachment from a beginning of the at least one slot to an end of the at least one slot" as recited in independent claim 1 of the '979 Patent. The remainder of this paragraph comprises legal conclusions to which no response is required. To the extent a response is required, Dyson is without knowledge sufficient to form a belief as to the truth of such allegations and therefore denies them.

**Paragraph No. 39:** For example, the FlexStyle™ Auto-Wrap Curler accessory has openings that are defined by rectangular baffles. The openings are entirely defined by such baffles, which are internal to the device and do not constitute an "external surface," and no part of the openings are defined by any external surface of a substantially contiguous wall of the attachment. The separateness of the openings from the convex outer surface is made even more acute by the physical separation (in both the horizontal and vertical direction) between the openings and the convex outer surface of the curler. In particular, the curler includes a vertical sidewall that separates the openings from the convex outer surface of the curler, and the wall and outer surface are separated by an observable gap.

**Answer to Paragraph No. 39:** Denied.

**Paragraph No. 40:** The FlexStyle™ design is in stark contrast to embodiments of the '979 patent, in which the outlet is formed in part by an external surface of a substantially contiguous wall of the attachment, as shown for example in an annotated Figure 5b of the '979 patent submitted by Dyson to the PTO (shown below) (December 22, 2020 Appeal Brief at 4):

20



*FIG. 5b*

As shown above, the outlet through which fluid air (labelled 122) travels is defined in part by the "External Surface" of the attachment (labelled 112).

**Answer to Paragraph No. 40:** Denied.

**Paragraph No. 41:** The distinction above between the FlexStyle[TM] and claim 1 is one of the principal bases on which Dyson obtained its claims from the PTO. To try to avoid prior art, Dyson repeatedly was forced to amend the claims to require that the external surface that at least partially defines the outlet is a "substantially contiguous wall" of the attachment, and that the "external surface of the substantially contiguous wall is an outermost surface of the attachment along an entire length of the attachment from a beginning of the at least one slot to an end of the at least one slot." Dec. 11, 2017 Amendment at 2-4; May 10, 2018 Amendment at 2-4; Feb. 18, 2020 Amendment at 2. As demonstrated above, the openings in the FlexStyle[TM] Auto-Wrap Curler accessory are defined by internal rectangular baffles that are not an external surface of a substantially contiguous wall of the attachment nor an outermost surface of the attachment, let alone one that extends along the entire length of the attachment. Thus, the FlexStyle[TM] does not infringe either literally or under the doctrine of equivalents.

**Answer to Paragraph No. 41:** The December 11, 2017 Amendment, May 10, 2018 Amendment, and February 18, 2020 Amendment are attached hereto as **Exhibits I**, **J**, and **K**,

respectively. The contents of the amendments speak for themselves and are incorporated herein by reference. The remainder of this paragraph comprises legal conclusions to which no response is required. To the extent a response is required, Dyson is without knowledge sufficient to form a belief as to the truth of such allegations and therefore denies them.

**Paragraph No. 42:** As another example, SharkNinja's Shark FlexStyle™ Air Styling & Drying System does not meet at least the element "wherein the outlet in the cylindrical second portion of the attachment comprises at least one slot extending continuously from the proximal first portion to a distal end of the attachment" as recited in independent claim 17 of the '979 patent, for the same reasons as those set forth above for claim 1.

**Answer to Paragraph No. 42:** Denied.

**Paragraph No. 43:** As another example, SharkNinja's Shark FlexStyle™ Air Styling & Drying System does not have at least "wherein the outlet is at least partially defined by an external surface of a substantially contiguous wall of the attachment and is configured to direct fluid flow emitted from the outlet tangentially along and around the external surface of the substantially contiguous wall to form a circumferential fluid flow around the cylindrical second portion of the attachment that encourages hair to automatically wrap around the cylindrical second portion, wherein the external surface of the substantially contiguous wall is an outermost surface of the attachment along an entire length of the attachment from a beginning of the at least one slot to an end of the at least one slot" as recited in independent claim 17 of the '979 patent, for the same reasons as those set forth above for claim 1.

**Answer to Paragraph No. 43:** Denied.

**Paragraph No. 44:** SharkNinja is entitled to a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that SharkNinja and the SharkNinja Shark FlexStyle<sup>TM</sup> Air Styling & Drying System do not infringe any claim of the '979 patent, either literally or under the doctrine of equivalents.

**Answer to Paragraph No. 44:** Denied.

## RESPONSE TO PRAYER FOR RELIEF

Plaintiffs SharkNinja Operating LLC and SharkNinja Sales Company are not entitled to any relief whatsoever, whether recited in the Complaint or otherwise.

## COUNTERCLAIM FOR PATENT INFRINGEMENT

Counter-Plaintiffs Dyson, Inc. and Dyson Technology Limited (collectively, "Dyson") hereby counterclaim against Counter-Defendants SharkNinja Operating LLC and SharkNinja Sales Company (collectively, "Shark"), seeking damages and other relief for patent infringement, and allege on information and belief, as follows:

## NATURE OF THE ACTION

1.     This is a civil action for infringement. This action is based upon the Patent Laws of the United States, 35 U.S.C. § 271 *et seq*.

## THE PARTIES

2.     Counter-Plaintiff Dyson, Inc. is an Illinois corporation with its principal place of business at 1330 W. Fulton Street, 5th Floor, Chicago, Illinois, 60607.

3.     Counter-Plaintiff Dyson Technology Limited is a private limited company organized and existing under the laws of England and Wales, with its principal place of business at Tetbury Hill, Malmesbury SN16, 0RP, United Kingdom.

4.     According to the Complaint at ¶ 2, and as admitted by Shark, Counter-Defendant SharkNinja Operating LLC is a limited liability company organized and existing under the laws

of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, Massachusetts 02494.

5.      According to the Complaint at ¶ 3, and as admitted by Shark, Counter-Defendant SharkNinja Sales Company is a Delaware Corporation organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, Massachusetts 02494.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this counterclaim pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over Shark because each of Defendants SharkNinja Operating LLC and SharkNinja Sales Company voluntarily filed this case in this District, and each has a principal place of business in this District.  Further, on information and belief, Shark has conducted and is conducting substantial business in this District, both generally and with respect to the allegations in this Counter-Complaint, and Shark has committed one or more acts of infringement in this District.  Shark has waived any claim that the Court lacks personal jurisdiction over Shark.

8.      Venue is proper in this District because each of Defendants SharkNinja Operating LLC and SharkNinja Sales Company voluntarily filed this case in this District, and each has a principal place of business in this District.  Further, on information and belief, Shark has conducted and is conducting substantial business in this District, both generally and with respect to the allegations in this Counter-Complaint, and Shark has committed, and is continuing to commit, acts of patent infringement in this District by making, using, importing, selling, or

offering to sell infringing hair stylers, accessories, and parts that infringe Dyson's asserted patent. Shark has waived any claim that the Court lacks proper venue.

## ASSERTED PATENT

9.      Dyson has invested heavily in developing the technology implemented in its inventions, including the asserted patent.

10.     On June 29, 2021, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,044,979 ("the '979 Patent" and/or "the asserted patent"), titled "ATTACHMENT FOR A HAND HELD APPLIANCE," naming Alasdair Michael MacLaine as inventor.

11.     A true and correct copy of the '979 Patent was attached to Shark's Complaint as **Exhibit A**.

12.     Dyson Technology Limited owns all rights, title, and interest in and to the '979 Patent and has the right to sue and recover for past, present, and future infringement.

13.     Dyson, Inc. is the exclusive U.S. distributor of Dyson hair stylers, including the Dyson Airwrap® multi-styler, accessories, and parts in the United States.

## BACKGROUND AND FACTS:

## THE DYSON AIRWRAP® MULTI-STYLER

14.     The Dyson Airwrap® multi-styler (hereinafter, "Dyson Airwrap®") embodies one or more of the claims of the '979 Patent.

15.     Dyson is a British-headquartered technology company, founded by inventor James Dyson. Dyson is known for revolutionary designs in devices that operate using airflow, including vacuum cleaners, air purifiers, and hair dryers and stylers.

16.     Innovative airflow technology has been at the heart of Dyson's engineering from the beginning. Starting with the DC01 upright vacuum cleaner that was launched in 1993,

innovative airflow design was at the core of Dyson vacuum cleaners with Dyson's pioneering cyclonic technology.

17.     When Dyson expanded into fans and purifiers, Dyson engineered bladeless machines to multiply and project airflow farther, without the "choppy" airflow of traditional bladed fans.

18.     Dyson adapted its knowledge of airflow to develop innovative hair styling tools that use Dyson's airflow technologies to achieve the same styles as traditional hair stylers, but reduce the reliance on the high temperatures used by traditional hair stylers to maintain hair health.

19.     Dyson's first product in hair care—the Dyson Supersonic™ hand-held hair dryer—launched in 2016 and became an instant critical and commercial success.

20.     Two years later, in 2018, Dyson launched the Dyson Airwrap®, an all-in-one styler that could curl, wave, smooth, and dry hair without the use of extreme heat.



21.     The Dyson Airwrap® is conceived and designed to take advantage of airflow that uses the Coanda effect—an aerodynamic phenomenon— where a high-velocity jet of air naturally attaches to and follows an adjacent surface, due to differences in pressure.

22.     The Dyson Airwrap® harnesses the Coanda effect by creating a circumferential flow of air around the cylindrical shaped barrels of the tool. The airflow attracts a hair tress to the barrel, encouraging hair to wrap itself around the barrel and thereby curling it.

23.     Developing and optimizing the Dyson Airwrap® was no easy feat, and it took many iterations to perfect the curling barrels featured on the Dyson Airwrap® styler.

24.     Dyson is known throughout the world for designing, manufacturing and selling visually appealing, high quality and innovative household appliances, including vacuums, air purifiers and haircare products.

25.     Since launching, the Dyson Airwrap® has been a tremendous commercial success and is an award-winning design. By way of example and without limitation, the Airwrap® was a winner of Harper's Bazaar Hair Awards 2023 "Best for Damaged Hair" category; a recipient of Allure's Best of Beauty Award in 2022, 2021, and 2020; on the list of Elle Beauty Awards 2022: Hair Care Winners; a recipient of SELF's 2022 Healthy Beauty Award "Best At-Home Hair Tool" category; on the list of Good Housekeeping's Beauty Awards 2021: Best in Beauty Award Hall of Fame; a recipient of the 2020 Glamour Beauty Award; a winner of Women's Health 2021 Healthy Hair Award: "Best Hot Tool For Straight Hair" category; a 2019 CEW Beauty Awards Winner for best Hair Tools; and a 2018 Beauty Innovator Award from Refinery29. The Airwrap® has also been the subject of news coverage by reputable and widely circulated publications such as *Forbes*, *Harper's Bazaar*, *Time* and *Vogue*.

26.     Dyson's success in hair care was no accident; rather, it was the product of years of research, development, engineering, design, and substantial monetary and capital investment. Dyson conducted extensive research in the field of hair science, including a global study that revealed misconceptions around hair damage and unhealthy styling habits. **Exhibit 1**. The work

has spanned more than a decade and included investment of over £100 million into laboratories around the world. Today, there are thousands of Dyson engineers and scientists working globally to continue their research into developing hair styling tools and products for all hair types and styles with less damage.

**THE INFRINGING SHARK FLEXSTYLE™**

27.     On information and belief, Shark makes, uses, offers for sale, sells, and/or imports the Shark FlexStyle (hereinafter, "FlexStyle") in the United States and markets it as the Shark FlexStyle™ Air Styling & Drying System, as shown in **Exhibit 2** and the image below.



28.     On information and belief, and as shown above and in **Exhibit 3**, the FlexStyle is available for purchase in the United States, and in this District.

29.     On information and belief, the FlexStyle is designed to utilize airflow and the Coanda effect in order to automatically wrap, curl, and set hair in the same manner as is described in the '979 Patent and as implemented in the Dyson Airwrap®. For example, as shown in the image below, an advertisement for the FlexStyle calls out the "Coanda Technology" that "wraps, curls, [and] sets" hair.



30.     On information and belief, Shark knowingly and intentionally copied elements of the Dyson Airwrap® to design and create the FlexStyle.

31.     **Exhibit 4** shows a *2022 Annual Results Presentation* by JS Global Lifestyle Company Limited, Shark's parent company, in which it touts the success of the FlexStyle.

32.     On information and belief, Shark knows that the FlexStyle is Shark's "version of the Dyson Airwrap." **Exhibit 4** at 19.

33.     On information and belief, Shark considers its product the "ultimate answer to fast, easy styling" because, as noted above, the FlexStyle takes advantage of Coanda effect to encourage "automatic curling." *Id.*

34.     On information and belief, Shark knows that the market considers the FlexStyle "a dupe for Dyson" Airwrap®. **Exhibit 4** at 19; *see also* **Exhibit 5**.



35.      On information and belief, Shark's business strategy is to undercut sales of the Dyson Airwrap® with its FlexStyle, which it touts as "half the price and just as good." **Exhibit 4** at 19.

36.     For example, Shark has made performance comparisons between the FlexStyle and the Dyson Airwrap with commentary on the packaging alleging "[F]aster Dry Time vs. Dyson AirWrap."



37.    As a further example, on information and belief, Shark has used Google Ads in at least the United Kingdom to bid on keywords such as "Airwrap dupe."

38.    As shown in **Exhibit 6**, the FlexStyle has been referred in the market to as "[a] Dyson dupe," that is "[p]owered by the same Coanda self-curling tech that . . . put Dyson's AirWrap on the map."

39.    In addition to selling the FlexStyle, Shark also sells spare barrel attachments for the FlexStyle called the Shark FlexStyle .95" Autowrap Curlers and the Shark FlexStyle 1.25" Autowrap Curlers (hereinafter, "FlexStyle Autowrap attachments"), shown below.



40.    On information and belief, when used as intended, the FlexStyle Autowrap attachments also utilize airflow powered by the Coanda effect in order to automatically wrap, curl, and set hair in the same manner as is described in the '979 Patent and as implemented in the Dyson Airwrap®. **Exhibit 7**; **Exhibit 8**.



## COUNT I.

## INFRINGEMENT OF U.S. PATENT NO. 11,044,979

41.     Paragraphs 1 through 40 are incorporated by reference as though fully stated herein.

42.     The '979 Patent is valid and enforceable.

43.     As shown in **Exhibit 2**, the FlexStyle and the FlexStyle Autowrap attachments meet each and every limitation of at least claim 1 of the '979 Patent, either literally and/or under the doctrine of equivalents.

44.     On information and belief, Shark had actual knowledge of the '979 Patent at least as early as March 7, 2023.

45.     Shark touts that it "takes intellectual property very seriously and takes active steps to avoid violations of any valid intellectual property rights of others." **Exhibit 9**. On information and belief, based on Shark's statements that it takes active steps to avoid violations of third party

intellectual property rights, Shark knew of its infringement of the '979 Patent at least as early as March 7, 2023.

46. In the alternative, on information and belief, Shark had actual knowledge of and/or was willfully blind as to the existence of the '979 Patent as of its issuance on June 29, 2021.

47. In the alternative, on information and belief, and based on the fact that Shark "takes intellectual property very seriously and takes active steps" with regard to "any valid intellectual property rights of others," Shark was willfully blind as to its infringement of the '979 Patent as of its issuance on June 29, 2021.

48. On information and belief, Shark became aware of the '979 Patent during development and/or product launch of the Shark FlexStyle.

49. In the alternative, during development and product launch of the Shark FlexStyle and thereafter, Shark was willfully blind to its infringement of the '979 Patent. Shark had a subjective belief and knowledge of a high probability that Dyson had U.S. patent rights that would cover the Shark FlexStyle, Shark FlexStyle .95" Autowrap Curlers and/or the Shark FlexStyle 1.25" Autowrap Curlers and took deliberate action to avoid learning that fact.

50. Shark is and was aware that Dyson is a competitor in the market for hair stylers that take advantage of airflow that uses the Coanda effect. More specifically, Shark is and was aware of the Dyson Airwrap®.

51. Shark is and was aware that Dyson holds many patents, including U.S. patents, in the area of consumer products using airflow.

52. Shark is and was aware that Dyson vigorously enforces its U.S. patent rights.

53.     On March 7 and March 8, 2023, Dyson Technology Limited sent Shark letters in Germany, France, and the United Kingdom regarding Shark's infringement of EP(DE) 3 119 234 B1 and EP(FR) 3 119 234 B1 ("EP 234"). Shark responded to those letters on March 14, 2023. The '979 Patent is in the same patent family as EP 234.

54.     On March 14, 2023, Dyson Technology Limited sued Shark in Germany for infringement of EP 234.

55.     On April 4, 2023, Dyson Technology Limited served Shark in France with proceedings for infringement of EP 234. A request for preliminary injunction is pending in France.

56.     On May 4, 2023, the Munich Regional Court I in Germany entered a preliminary injunction against Shark for infringement of claims 1 and 10 of EP 234. **Exhibit 10**.

57.     On May 31, 2023, Dyson sent Shark a letter regarding Shark's ongoing infringement of Dyson's '979 Patent in the United States and Shark's knowledge thereof. **Exhibit B.**

58.     On or around May 26, 2023, the Munich Regional Court I in Germany entered a final judgment and injunction against Shark for infringement of claims 1 and 10 of EP 234. **Exhibit 11**.

59.     On June 6, 2023, Shark filed the Complaint in this Action. Shark's Complaint recites arguments for non-infringement that are substantially the same as those Shark advanced in the Munich Regional Court I in Germany, and which were rejected by that Court when it entered a final judgment against Shark for infringement of claims 1 and 10 of EP 234.

60.     Shark's June 6, 2023, Complaint does not mention or disclose the final judgment and injunction of the Munich Regional Court I in Germany against Shark for infringement of

claims 1 and 10 of EP 234, despite the fact that Shark was aware of the final judgment and injunction at the time of filing.[1]

61. Shark has directly infringed and continues to directly infringe at least claim 1 of the '979 Patent under 35 U.S.C. § 271(a) by making, using, importing, selling, and/or offering to sell the FlexStyle and the FlexStyle Autowrap attachments.

62. Shark has induced infringement and continues to induce infringement of at least claim 1 of the '979 Patent in violation of 35 U.S.C. § 271(b), either literally and/or under the doctrine of equivalents. On information and belief, Shark, knowing (or willfully blind to the fact) as of June 29, 2021 that the FlexStyle and/or the FlexStyle Autowrap attachments meet each and every element of at least claim 1 of the '979 Patent, has acted with specific intent to induce third parties, including end users, to use and/or assemble, without license or authority, the FlexStyle and/or the FlexStyle Autowrap attachments in a manner that infringes one or more claims of the '979 Patent.[2]

63. In the alternative, on information and belief, Shark, knowing as of March 7, 2023, that the FlexStyle and/or the FlexStyle Autowrap attachments meet each and every element of at least claim 1 of the '979 Patent, has acted with specific intent to induce third parties, including end users, to use and/or assemble, without license or authority, the FlexStyle and/or the FlexStyle Autowrap attachments in a manner that infringes one or more claims of the '979 Patent.

---

[1] On information and belief, Shark has recently filed a nullity action regarding EP 234 in Germany, which is in its early stages.
[2] *See, e.g.*, https://res.cloudinary.com/sharkninja-na/video/upload/q_auto,f_auto/v1682355293/SharkUS/ISH%202023/Flexstyle/Styling%20Videos/44_Wavy_Mini_Curlers_2023-03-31.mov
https://res.cloudinary.com/sharkninja-na/video/upload/q_auto,f_auto/v1682022166/SharkUS/ISH%202023/Flexstyle/Styling%20Videos/Tips_for_Curl_Longevity_For_Straight_Wavy_Hair.mp4

64.     Shark has contributed to the infringement by third parties, including end users, of at least claim 1 of the '979 Patent in violation of 35 U.S.C. § 271(c), either literally or under the doctrine of equivalents. On information and belief, Shark imported, sold, and/or offered to sell the FlexStyle, its accessories and parts, and the FlexStyle Autowrap attachments, that act as a material component of the claims of the '979 Patent, knowing (or willfully blind as to) the same to be especially made or especially adapted for use in an infringement of the '979 Patent, and which are not a staple article or commodity of commerce suitable for substantial non-infringing use.

65.     Shark's infringement has damaged and injured, and continues to damage and injure, Dyson. The injury to Dyson is irreparable and will continue unless and until Shark is enjoined from further infringement.

66.     As discussed in detail herein, on information and belief Shark has engaged and is engaging in willful and deliberate infringement of the '979 Patent.

67.     Despite knowing of (or being willfully blind to) Dyson's '979 Patent, including without limitation by virtue of (a) its knowledge of Dyson, the Airwrap®, and Dyson's patent rights, discussed herein, (b) the pending German and French patent litigations involving EP 234, (c) the Munich Regional Court preliminary injunction against Shark for infringement of EP 234, (d) the Munich Regional Court I in Germany's final judgment and injunction against Shark for infringement of claims 1 and 10 of EP 234, and (e) Dyson's letter to Shark regarding its infringement of Dyson's '979 Patent, Shark knowingly and intentionally continues to make, use, offer for sale, sell, and/or import its FlexStyle, its parts and accessories, and the FlexStyle Autowrap curlers in the United States.

36

68.     On information and belief, Shark's infringement of the '979 Patent has been and continues to be deliberate and/or intentional.

69.     Shark's infringement of the '979 Patent has been and continues to be willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, and/or characteristic of a pirate.

70.     Such willful, wanton, malicious, bad-faith deliberate, consciously wrongful, flagrant infringement justifies an increase of up to three times the damages to be assessed pursuant to 35 U.S.C. § 284.

71.     Shark's actions, including but not limited to its willful, wanton, malicious, bad-faith deliberate, consciously wrongful, flagrant infringement and its filing of the Complaint in this Action (which failed to mention or disclose the final judgment and injunction of the Munich Regional Court I in Germany against Shark for infringement of claims 1 and 10 of EP 234) further qualifies this action as an exceptional case supporting an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

**PRAYER FOR RELIEF**

WHEREFORE, Dyson respectfully requests that this Court:

A.     Enter a judgment in favor of Dyson and against Shark, finding that Shark has infringed and continues to infringe one or more claims of the '979 Patent;

B.     Enter a judgment in favor of Dyson and against Shark, finding that Shark has induced, and continues to induce, the infringement of one or more claims of the '979 Patent;

C.     Enter a judgment in favor of Dyson and against Shark, finding that Shark has contributorily infringed and continues to contributorily infringe one or more claims of the '979 Patent;

D.     Enter a judgment in favor of Dyson and against Shark, finding that Shark has willfully infringed one or more claims of the '979 Patent;

E.     Enter a judgment in favor of Dyson and against Shark, awarding Dyson damages in an amount to be proven at trial sufficient to compensate Dyson for Shark's past infringement and any continuing future infringement of the '979 Patent through the date such judgment is entered, but not less than a reasonable royalty for Shark's infringement;

F.     Enter a judgment in favor of Dyson and against Shark, awarding Dyson pre-judgment and post-judgment interest pursuant to 35 U.S.C. § 284;

G.     Enter a judgment in favor of Dyson and against Shark, awarding Dyson increased damages pursuant to 35 U.S.C. § 284, in an amount up to three times the amount of actual damages awarded to Dyson, by reason of Shark's willful infringement of the '979 Patent;

H.     Enter a judgment in favor of Dyson and against Shark, declaring this case exceptional under 35 U.S.C. § 285 and awarding Dyson its reasonable attorneys' fees, expenses, and costs incurred in prosecuting this action;

I.     Enter a judgment in favor of Dyson and against Shark, issuing a permanent injunction enjoining Shark, its officers, directors, servants, managers, employees, agents, attorneys, successors and assignees, and all persons in active concert or participation with any of them, from further acts of infringement of the '979 Patent;

J.     Deny all claims for relief and relief sought in Shark's Complaint; and

K.     Grant Dyson such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Dyson hereby demands a jury trial on all issues triable by a jury.

Dated: June 9, 2023

Respectfully submitted,

*/s/ Michael G. Strapp*

Michael G. Strapp (BBO #653884)

**DLA Piper LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone: 617.406.6031
Facsimile: 617.406.6100
michael.strapp@us.dlapiper.com


*Attorneys for Defendants*

Of Counsel and *pro hac vice* forthcoming:

Paul R. Steadman
Paulina Starostka
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: 312.368.2135
Fax: 312.251.2850
paul.steadman@us.dlapiper.com
paulina.starostka@us.dlapiper.com

Helena Kiepura
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel:  202.733.4000
Fax: 202.799.500
helena.kiepura@us.dlapiper.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 9, 2023

*/s/ Michael G. Strapp*
Michael G. Strapp